IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D'MEIR SWINGON, a minor by and through Parent and Natural Guardian KIM LONG,<br><br>Plaintiff,<br><br>v.<br><br>RONALD SIMONSON, CHESTER HIGH SCHOOL and CHESTER UPLAND SCHOOL DISTRICT,<br><br>Defendants. | CIVIL ACTION<br><br><br>NO.  16-cv-475 |

**MEMORANDUM RE DEFENDANTS' MOTION TO DISMISS**

**Baylson, J.**                                                                                             **May 3, 2016**

I.      Introduction

Plaintiff D'Meir Swingon, by and through his parent Kim Long ("Plaintiff"), has sued Chester Upland School District (the "District") [1] and Ronald Simonson, a security guard employed by the District.  Plaintiff asserts two claims for negligence in violation of the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541, 8542 (2016) (the "Act")  (Count I against all Defendants, Count II against Simonson only), as well as counts under 42 U.S.C. § 1983 for excessive use of force (Count III), state created danger (Count IV), and "municipal violations" (a claim pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)) (Count V).  Plaintiff claims he was injured when Simonson threw Plaintiff to the ground following a disturbance at Chester High School involving Plaintiff on February 28, 2013.

---

[1] Plaintiff has also sued "Chester High School," but Defendants aver that Chester High School is incorrectly named as separate from the District.  As Plaintiff does not appear to dispute this, the Court will consider the District and Chester High School to be one entity.

1

Defendants have each moved to dismiss Plaintiff's Second Amended Complaint, ECF 5 (the "SAC"). Simonson argues that the Act bars Plaintiff's negligence claims, that the SAC does not plead facts sufficient to establish excessive force or state-created danger, and that municipal liability cannot lie against an individual employee. ECF 12. The District echoes Simonson's arguments and further avers that Plaintiff has not pled the requirements for Monell liability. ECF 13.

For the reasons that follow, Plaintiff's negligence and state-created danger claims shall be dismissed against both Defendants. Plaintiff's excessive force claim against Simonson survives dismissal. Although Plaintiff's Monell claim against the District currently fails as stated, the Court will allow Plaintiff a chance to file an amended pleading.

## II.     Factual Allegations

Plaintiff avers that prior to February 28, 2013, Simonson and Plaintiff had several interactions. Approximately two years earlier, Simonson purportedly pushed Plaintiff down a flight of stairs at Columbus Elementary School. SAC ¶ 19. Plaintiff also claims that Simonson "lodged aggressive and threatening verbal declarations" at Plaintiff and "exhibited significant and outwardly obvious distain and contempt" for Plaintiff at unspecified times and dates. Id. ¶¶ 21-23. Unnamed administrators of the District were aware of these incidents. Id. ¶ 23.

On February 28, 2013, Simonson became aware of a disturbance at Chester High School involving Plaintiff. Id. ¶¶ 16-17. Plaintiff claims to have "suffered serious and permanent injuries, damages and losses when he was physically and intentionally restrained against his will by security guard and/or security officer, Ronald Simonson, who caused Plaintiff to be intentionally and violently thrown to the ground causing his body, including but not limited to his head, face and mouth, to forcefully impact the ground surface." Id. ¶ 34. Plaintiff claims

Simonson did this after the disturbance had concluded. Id. ¶ 41. Plaintiff further asserts that he suffered serious injuries including a laceration to his chin, a hematoma to his inner lower and upper lip, the fracturing and ultimate removal of a tooth, and damage to his teeth requiring a root canal. Id. ¶ 49.

Plaintiff further avers that after the February 28 incident, Simonson said to Plaintiff that Plaintiff "knew what happened to [Plaintiff] 'last time'" in reference to when Simonson threw Plaintiff to the ground. Id. ¶ 46.

### III. Analysis

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

#### A. Negligence Against All Defendants (Count I) and the Pennsylvania Political Subdivision Tort Claims Act

"Under the [Act], local agencies such as school districts are given broad tort immunity. The Act provides that, 'no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.' 42 Pa. Cons. Stat. § 8541." Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). Section 8542 of the Act provides for eight exceptions to the general rule.

Plaintiff argues that the Act does not bar his claim because of an exception allowing suits for negligence in "[t]he care, custody or control of real property in the possession of the local

3

agency," 42 Pa. Cons. Stat. § 8542(b)(3) (2016). ECF 14 at 7-10.[2] Plaintiff's argument rests on two theories: 1) Defendants did not properly design the concrete pavement surrounding the school "to allow for impact attenuation and injury prevention," ECF 14 at 9,[3] and 2) Defendants "failed to monitor, supervise and/or conduct surveillance of the Plaintiff and of Defendant, Swingon, ECF 14 at 10.

As to the latter contention, Plaintiff is trying to improperly recast a claim for negligent supervision into one for premises liability. See Mascaro v. Youth Study Ctr., 523 A.2d 1118, 1124 (Pa. 1987) ("The real estate exception . . . has consistently been held to be unavailable to those whose claim of negligence consists of a failure to supervise the conduct of students or persons adequately."); Wilson v. Norristown Area Sch. Dist., 783 A.2d 871, 876 (Pa. Commw. Ct. 2001) (holding that no claim could lie against a school for student's slipping on stairs while running drills inside because the claim amounted to one for negligent supervision by her field hockey coach and not a defect in the school's real property). Tiedeman v. City of Phila., 732 A.2d 696, 699 (Pa. Commw. Ct. 1999), in which plaintiff tried to use the real estate exception to sue the City of Philadelphia for negligent supervision after a city employee named Clark slammed the plaintiff into a concrete abutment, is instructive. In Tiedeman the court affirmed dismissal at the motion to dismiss stage, holding "the dangerous condition must arise from the property itself, or the care, custody and control of it. Clark is a human being, not real property owned or maintained by the City. Thus, the condition of the Defendants' property, or negligent maintenance of it, did not cause Mr. Tiedeman's injuries." There is nothing about Simonson's

---

[2] The Pennsylvania Supreme Court has admonished that this exception "is to be narrowly construed in order to give effect to the legislative intent to insulate political subdivisions from tort liability." Gardner by Gardner v. Consol. Rail Corp., 573 A.2d 1016, 1018 n.4 (Pa. 1990).
[3] Plaintiff filed identical Oppositions to the Defendants' Motions except for the name of the Defendant on the first page. Compare ECF 14 with ECF 15.

alleged failure to supervise either himself or the Plaintiff that would go to Defendants' maintenance of the Chester High School real property.

The claim that Defendants did not properly design the concrete pavement around Chester High School similarly fails. As to the District, Plaintiff points to no case, and this Court is aware of none, in which concrete has been held to constitute a defect in real estate because it is insufficiently soft to absorb an impact from someone coming into bodily contact with it.[4] As to Simonson, the complaint further does not plausibly allege that he was involved in the installation or maintenance of the concrete at the school even assuming such concrete was somehow defective.

Accordingly, Plaintiff's negligence claim fails and Count I shall be dismissed.

### B. Negligence Against Simonson (Count II)

In Count II of the SAC, asserted against only Simonson, Plaintiff avers that Simonson was negligent by "negligently touching and coming into physical contact with" Plaintiff. SAC ¶ 67; see also id. ¶ 51 (same). Since there is no "negligent touching" exception to the Act, those allegations fail to state a claim for relief and Count II shall be dismissed.

### C. Excessive Use of Force (Count III)

As to the District, the SAC appears to be asserting a Monell claim. ¶¶ 69-74, 76-78. The Court will address this claim in "Municipal Liability" infra, and here discusses the merits of Plaintiff's claim of excessive force against Simonson individually.

---

[4] Plaintiff's citation to Gump by Gump v. Chartiers-Houston School District, 558 A.2d 589, 591 (Pa. Commw. Ct. 1989) is not on point. In Gump, the court held that the real estate exception allowed a claim to proceed where plaintiff alleged the school acted negligently in not using shatterproof glass windows, resulting in plaintiff putting his hand through a window during a running drill in the hallways. In this case, there is no plausible allegation that the concrete Defendants used to build the school was defective for its ordinary use (i.e., for people walking on it).

Although the SAC alleges that Defendants' alleged use of excessive force violates the Fourth and Fourteenth Amendments, ¶ 75, the Third Circuit has held that only "the Fourteenth Amendment's shocks the conscience standard [applies] to federal claims alleging the use of excessive force by public school officials."  Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001) (rejecting application of Fourth Amendment).  Gottlieb further clarified that there are four factors to be considered in a shocks-the-conscience inquiry:

> a) Was there a pedagogical justification for the use of force?; b) Was the force utilized excessive to meet the legitimate objective in this situation?; c) Was the force applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?; and d) Was there a serious injury?

Id. at 173.  An examination of these factors leads the Court to conclude that Plaintiff's claim survives Simonson's Motion.

As to pedagogical justification, the Third Circuit has held that "where a school official grabs a student to break up a fight . . . the reason that the administrator resorts to force is evident."  Id. at 174.  Here, however, Plaintiff alleges that Simonson threw Plaintiff to the ground after the disturbance had ended.  SAC ¶ 41.

As to the excessiveness of force, Gottlieb further held that where "there was no need for [a school official] to use force at all, excessivity is simply not an issue."  272 F.3d at 174.  Accepting Plaintiff's allegations as true, there does not appear to have been any need to use force if Simonson threw Plaintiff down after the disturbance had concluded.

As to the good faith of Simonson's actions, the Court cannot hold at the motion to dismiss stage that this factor weighs in favor of dismissal.  If in fact Simonson threw Plaintiff to the ground after the disturbance was concluded, it is possible the evidence will show that Simonson did so solely to injure Plaintiff.

Finally, Plaintiff has alleged that he suffered serious injuries including a laceration to his chin, a hematoma to his inner lower and upper lip, the fracturing and ultimate removal of a tooth, and damage to his teeth requiring a root canal.  SAC ¶ 49.

Accordingly, the Court shall not dismiss Count III as against Simonson.

### D.  State Created Danger (Count IV)

The state created danger count appears to be asserted against Simonson individually and against the District under a Monell theory.  Because the parties misunderstand the nature of the state-created danger doctrine, however, some exposition is warranted.

"The state-created danger theory [can be] utilized to find a constitutional tort duty under § 1983 outside of a strictly custodial context."  See D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1373 (3d Cir. 1992).  The doctrine has its origins in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), which held that the state defendants had no affirmative constitutional duty to act to remove a child from his abusive home.  The DeShaney court noted, "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  Id. at 201.  The Third Circuit has interpreted this language to impose liability on state actors who "create[] a danger which deprive[s] an individual of her Fourteenth Amendment right to substantive due process."  See Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996).

The common thread in state-created danger cases is that the state actor himself does not cause harm to the plaintiff, but instead acts affirmatively in some way to create conditions in which the plaintiff is at greater risk of harm from third parties or other intervening forces outside of the state actor's control.  E.g., Phillips v. Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008)

(reversing dismissal of state created danger claim where two 911 operators accessed unauthorized personal information and provided it to fellow call operator, who then used it to locate and murder plaintiff); Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004) (affirming denial of summary judgment on state created danger claim where paramedics failed to disclose to police that patient had just suffered a seizure, thereby putting patient at increased risk of being restrained in contravention of medical practice of avoiding restraining such victims); Kneipp, 95 F.3d at 1211 (reversing summary judgment on state created danger where police allowed a visibly intoxicated woman to walk home alone, thereby increasing her risk of falling and injuring herself). As this Court has previously noted, "[v]iable state-created danger claims have been limited in this jurisdiction and others to situations where the state actor's affirmative conduct creates an immediate threat of harm to a known person or a relatively small group of individuals with no countervailing public benefit." Crockett v. Se. Pa. Transp. Ass'n, Civil Action No. 12-4230, 2013 WL 2983117, at *5 (E.D. Pa. June 14, 2013) (citations omitted).

      In this case, Plaintiff does not allege that Simonson acted in such a way as to expose Plaintiff to a greater danger from an outside or intervening force. Plaintiff instead alleges that Simonson acted directly to harm Plaintiff by throwing him onto the concrete. Plaintiff's claims in this case therefore do not implicate the state-created danger theory. Cf. Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724 (3d Cir. 1989) ("The significance of the status of the perpetrator as a private actor rather than as a state official is referred to on numerous occasions in the DeShaney opinion.").

      Accordingly, Count IV will be dismissed.

### E. Municipal Liability (Count V)

As Simonson correctly points out, claims for municipal liability under <u>Monell</u> do not extend to an individual employee as Simonson but are instead asserted against a municipality. <u>See</u> <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 245 (3d Cir. 2006).  Count V will be dismissed against Simonson, and the remainder of this section discusses the District's potential liability.

In <u>Monell</u> claims, "when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 657 (3d Cir. 2009) (citations omitted).  "Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.  If . . . the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." <u>Berg v. Cty. of Allegheny</u>, 219 F.3d 261, 276 (3d Cir. 2000) (citations and alterations omitted).

Plaintiff's <u>Monell</u> claims against the District appear predicated on its alleged failure to train, discipline and/or control Simonson or other school security officers, resulting in Simonson's alleged use of excessive force against Plaintiff.  SAC ¶¶ 23-32, 69-78, 86-97.  "[A] failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's

9

actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 126-27 (3d Cir. 1998).

The SAC has not pled sufficient facts to support a Monell claim. First, it does not identify either a specific custom or policy of the District or anyone who had policymaking authority who purportedly took or failed to take action. Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010) (affirming dismissal of Monell claim); McTernan v, 564 F.3d at 659 (citations omitted) ("[F]ormulaic recitation of the elements of a cause of action will not do."). Nor does Plaintiff's identification of a single alleged prior incident between Simonson and himself over two years ago at a different school constitute a pattern of similar incidents and circumstances. As this Court has previously held:

> [A] pattern of similar constitutional violations is ordinarily required to show deliberate indifference in the failure-to-train context. Where no such pattern is presented, the plaintiff must demonstrate that the putative constitutional violation was the highly predictable consequence of the defendant municipality's inadequate training program. It is only in the rare circumstance where a deficient training program so obviously would lead to constitutional violations that a single incident could demonstrate deliberate indifference.

Peters v. Community Educ. Centers, Inc., No. 11-CV-850, 2014 WL 981557, at *5 (E.D. Pa. Mar. 13, 2014).

The Court will accordingly dismiss the Monell claim against the District. Dismissal will be without prejudice, however, to the filing of a Third Amended Complaint in which Plaintiff may state additional details of this claim and do so in accordance with pleading rules. Should Plaintiff fail to file a Third Amended Complaint, the dismissal shall be with prejudice.

### IV. Conclusion

For the reasons outlined above, Plaintiff's negligence claims are barred by the Pennsylvania Political Subdivision Tort Claims Act and the state-created danger doctrine has no

applicability to this case.  Plaintiff's excessive force claim shall proceed against Simonson, and Plaintiff shall be granted leave to file a Third Amended Complaint in which Plaintiff may attempt to replead a <u>Monell</u> claim against the District.

An appropriate Order follows.


O:\CIVIL 16\16-475 Swingon v. Simonson\Motion to Dismiss SAC.docx